UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| IRIS PARKER, ) | 3:06-CV-0518-ECR (VPC) |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| UPSHER-SMITH LABORATORIES, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Before the court is the emergency motion of defendant Upsher-Smith Laboratories, Inc. ("defendant") for sanctions for plaintiff's interference with the court's discovery order authorizing *ex parte* communications with treating physicians (#73). Plaintiff, Iris Parker ("plaintiff") opposed (#80), defendant replied (#83), and this court held a hearing on the motion on February 12, 2009.

**I.     Procedural History**

Plaintiff brings this products liability action against defendant alleging that her husband, Arthur L. Parker, died as a result of injuries sustained from ingesting amiodarone, an anti-arrhythmic drug manufactured by defendant (#34). The court established monthly case management conferences in this action, given that it has been pending since September 2006, and the parties anticipated extensive discovery. Fact discovery is closed, the close of expert witness discovery is March 16, 2009, and dispositive motions are due April 15, 2009 (#65). The court advised that no further extensions of this most recent scheduling order would be granted (#66).

On February 3, 2008, this court held the monthly case management hearing, and in anticipation of that hearing, the parties filed case management reports (#s 71 & 72). Present on behalf of plaintiff were Mr. South and Mr. Whitehead, and Mr. South presented argument for the plaintiff. The parties

advised that an issue had arisen concerning whether defendant is entitled to interview certain treating physicians identified in plaintiff's disclosures to discuss their opinions and their care and treatment of the decedent. Plaintiff's position is that Nevada law prohibits defense counsel from having *ex parte* communications with a plaintiff's treating physician, and that Nev. Rev. Stat. § 49.245(3) only waives the privilege as to written medical or hospital records (#72). Defendant's view is that *ex parte* interviews of non-retained treating physicians are a proper part of the discovery process, and that plaintiff expressly waived the physician-patient privilege by bringing this action and authorizing release of the decedent's medical records (#71).

A second issue concerned whether the Health Insurance Portability and Accountability Act of 1996 (HIPAA) permits a physician to engage in *ex parte* interviews with defendant's counsel where the plaintiff has authorized disclosure under HIPAA regulations. It was undisputed that plaintiff executed a HIPAA authorization to allow physicians to disclose plaintiff's medical information. Defendant contends that once a HIPAA authorization is executed, *ex parte* interviews between plaintiff's treatment providers and defense counsel are permitted, and plaintiff takes a contrary review. Plaintiff disagrees and asserts that HIPAA does not pre-empt Nevada's physician-patient privilege, which only provides for a written waiver of medical records.

At the February 3, 2009 case management conference, the court heard oral argument from counsel on these issues and ruled in favor of defendant, as more fully set forth in its minute order (#75). In summary, the court held that defendant may engage in *ex parte* interviews of those treating physicians not designated as expert witnesses, and specifically authorized defendant's counsel to interview six physicians. *Id.* The court further directed counsel to meet and confer as to the scope of interviews, and if they could not resolve this issue, they were directed to file notices with the court, and a hearing would be scheduled to decide this matter. *Id.*

The court also found that HIPAA permits a physician to disclose a patient's medical information once a patient has executed a valid authorization. *Id.* Counsel reported that plaintiff executed the HIPAA authorizations in this proceeding, but they had expired, and plaintiff's counsel indicated he would not advise his client execute new authorizations; therefore, the court ordered that notwithstanding

2

this refusal, the court's order authorized the defendant's *ex parte* interviews of the physicians identified in the order. *Id.*

On February 5, 2009, plaintiff filed a document styled, "plaintiff's position regarding scope of defendant's ex parte communications with physicians" (#74). In it, plaintiff renewed her argument that *ex parte* interviews of the treating physicians are improper. *Id.* Plaintiff concluded by requesting that defendant's physician interviews "be limited only to the decedent's treatment for atrial fibrillation and his subsequent development of pulmonary difficulties." *Id.* Plaintiff was silent concerning any communications she had with decedent's treating physicians concerning the February 3, 2009 order.

Defendant did not immediately file a status report concerning counsels' efforts to resolve their dispute concerning the scope of the anticipated *ex parte* interviews with treating physicians; rather, defendant filed the pending motion for sanctions because plaintiff's counsel sent twenty letters to the decedent's treating physicians, including Mr. Parker's cardiologists, pulmonologists, family care physician, surgeon, and other physicians who treated Mr. Parker in the hospital prior to his death (#73).

The letters, dated February 4, 2009, are identical and state:

> I represent Iris Parker and the estate of her deceased husband, Arthur Parker, in connection with litigation brought against Upsher-Smith Laboratories. It is our contention in the lawsuit that Mr. Parker developed interstitial lung disease and died as a result of his taking amiodarone for treatment of an atrial fibrillation.
>
> Notwithstanding the requirements of HIPAA and the fact that the authorization previously provided to you has expired, Upsher-Smith, through its attorney, has requested that the court allow its attorney to contact Mr. Parker's treating physicians to discuss his case and treatment as it relates to his development of interstitial lung disease and ultimate death.
>
> I am writing this letter to inform you of the court's decision and also to advise you that even though the court has permitted counsel for Upsher-Smith to speak with you outside our presence, you are free to decide whether or not you wish to meet privately with defense counsel. There is legal authority which provides that neither HIPAA-compliant authorizations nor a court order can force a healthcare professional to communicate with the attorneys. *See, Arons v. Jutkowitz*, 9 N.Y.3d 393, 880 N.E.2d 831 (N.Y. 2007); *Moreland v. Austin*, 284 Ga. 730, 670 S.E.2d 68 (2008).
>
> If you decide to meet privately with counsel for Upsher-Smith, we would appreciate your advising us of your decision so that we may have an opportunity to meet privately with you as well.

3

If you have any questions regarding this matter, or wish to discuss the matter with me further, you may contact me.

Sincerely,

RANDS, SOUTH & GARDNER

Brett K. South

Mr. Whitehead, co-counsel for plaintiff, spoke with defendant's counsel on February 4, 2009, and they mutually agreed to continue their discussions on February 5, 2009. Although Mr. Whitehead knew that his co-counsel, Mr. South, had sent the twenty letters, he did not disclose this to defendant's counsel during their discussions. In the interim, defendant's counsel received copies of Mr. South's letters and then contacted Mr. Whitehead to advise he viewed the letters as an improper usurpation of the court's order to meet and confer (#81). Thereafter, defendant moved for sanctions.[1]

**II.    The February 12, 2009 Hearing**

Prior to hearing arguments of counsel, the court canvassed counsel for the parties, Mr. South and Mr. Moore, concerning their understanding of the court's February 3, 2009 order. The court asked the following questions:

1. Was it your understanding on February 3, 2009, that the court's order allowed defendant to conduct *ex parte* interview of treating physicians not designated as expert witnesses?

2. Was it your understanding on February 3, 2009, that the court ordered counsel for the parties to meet and confer concerning reasonable limitations about the scope of the *ex parte* physician interviews and report back to the court if the dispute remained unresolved?

3. Was it your understanding on February 3, 2009, that based on the directive to meet and confer on this issue, that any physician interviews would be deferred until this issue was resolved?

4. Was it your understanding on February 3, 2009, that with respect to HIPAA authorizations, the court determined that because plaintiff executed HIPAA-required

---

[1] Defendant also contends that plaintiff's counsel's interview with a *Reno Gazette-Journal* reporter who attended the February 3, 2009, hearing followed by a newspaper article could be characterized as an attempt to communicate indirectly with treating physicians who might read the article and decide not to participate in the *ex parte* interviews this court approved. Newspaper reporters frequently attend court hearings and report the news on cases. The court finds that Mr. South's interview was not improper.

4

    authorizations releasing the decedent's medical records, HIPAA was not an obstacle to the *ex parte* interviews that defendant requested?

 5. Was it your understanding on February 3, 2009, that when the court was advised that the HIPAA authorizations had expired, and plaintiff's counsel declined to have plaintiff execute new authorizations, the court ordered that notwithstanding that refusal, this court's order would serve as authorization?

 6. Is it correct that at the February 3, 2009, hearing, there was no discussion concerning whether physicians solicited for defendant's *ex parte* interviews could be compelled to participate?

Counsel acknowledged they understood what the court ordered, as set for above, with the exception of Item 3. Although defendant's counsel, Mr. Moore, understood that the interviews would be deferred until the scope of the interviews was established, Mr. South told the court that he did not have that understanding. Both counsel also agreed that there was no discussion at the hearing concerning whether treating physicians could be compelled to attend interviews with defendant's counsel.

  The court asked Mr. South to explain why he sent the twenty letters to treating physicians, and he replied that he felt it necessary to inform them that based on his further legal research after the February 3, 2009 hearing, he determined that they were entitled to notice that they were not compelled to attend any *ex parte* interviews. Mr. South told the court that he did not believe his letter violated the terms or the intent of the court's order, and that it was not a pre-emptive attempt to insure that physicians who received his letter would refuse to engage in *ex parte* interviews with defendant's counsel. As stated in plaintiff's opposition to the motion for sanctions, "Plaintiff had a right to inform the physicians about the purpose of the interviews and that they were not obligated to meet privately with Upsher-Smith's counsel," (#80, page 12, lines 3-4). Mr. South took the position that despite the court's order, he had an independent right to notify the treating physicians immediately that they were not compelled to submit to interviews with counsel.

**III. Discussion**

  **A. Sanctions Pursuant to the Court's Inherent Authority**

  The federal court has inherent power to levy sanctions, including attorney's fees, for "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . ." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766 (1980). In *Chambers*

5

*v. NASCO, Inc.*, 501 U.S. 32, 46 (1991), the Court reaffirmed the *Roadway* principles and "left no question that a court may levy fee-based sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose." *Fink v. Gomez,* 239 F.3d 989, 992 (9th Cir. 2001) (citing *Chambers,* 501 U.S. at 45-46, n.10). In *Fink,* the Ninth Circuit made clear that imposition of sanctions under a court's inherent power requires a finding of bad faith or "conduct tantamount to bad faith:"

> Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose. . . .An attorney's reckless misstatements of law or fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in a case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power.

*Id.* at 994. The burden of proof is "clear and convincing evidence" (*Roadway Express,* 447 U.S. at 764); however, a finding of bad faith may not be required when an "attorney acts recklessly with an improper intent." *Fink,* 239 F.3d at 993. The types of sanctions that may be imposed under the court's inherent powers include "fines, awards of attorney's fee and expenses, contempt citations, entries of dismissal or default, suspensions or disbarment, preclusion orders, disqualification of counsel, permission of adverse inferences and injunctions. *Id.*

### B.   Sanctions under Fed.R.Civ.P. 37(b)(2)

Fed.R.Civ.P. 37(b)(2) governs failures to comply with discovery orders and provides:

> If a party or a party's officer, director, or managing agent – or a witness designated under Rule 30(b)(6) or 31 (a)(4) – fails to obey an order to provide or permit discovery, includes an order under Rules 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.

The court has broad discretion to impose one or more of the listed sanctions or any other sanction it deems appropriate. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105-1106 (9th Cir. 2001). The court may deem facts established (*Insurance Corp of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694 (1982); *Navallier v. Sletten,* 262 F.3d 923, 947-48 (9th Cir. 2001), *cert. denied*, 536 U.S. 941 (2002)), prohibit evidence (*Hoffman v. Construction Protective Serv, Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008)), strike pleadings (*U.S. v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 617

6

F.2d 1365, 1369 (9th Cir. 1980)), enter a dispositive ruling *(G-K Properties v. Redevelopment Agency of the City of San Jose,* 577 F.2d 645, 647 (9th Cir. 1978))**,** or it may treat the failure to obey its order as a contempt of the court (*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992). The court is not limited to the sanctions listed in Rules 37(b)(2), and may make an order that it deems "just." *Valley Engineers, Inc. v. Electric Enginerring Co.,* cert. denied, 526 U.S. 1064 (1999) (justice is the central factor in a sanctions order under Rule 37(b)).

### C. Sanctions under 28 U.S.C. § 1927

28 U.S.C. § 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Although Section 1927 has a clear compensatory purpose because it permits an award of attorney's fees and costs, "it is in reality a penal statute designed to discourage unnecessary delay in litigation by requiring attorneys 'or other persons' to compensate personally other litigant who incur excess costs due to their misconduct." GEORGENE M. VAIRO, RULE 11 SANCTIONS 765 (3d ed. 2003), citing *Roadway Express,* 447 U.S. at 759-62 (Noting the importance of Section 1927 sanctions in that "lawyers who multiply legal proceedings [are] taxed with the extra 'costs' they generate.").

To warrant sanctions pursuant to Section 1927, a court must find the attorney acted with recklessness or subjective bad faith. *United States v. Blodgett,* 709 F.2d 608, 610 (9th Cir. 1983). Section 1927 sanctions may only be imposed on attorneys and *pro se* litigants. *Wages v. Internal Revenue Serv.*, 915 F.2d 1230, 1235-36 (9th Cir. 1989). Because imposition of Section 1927 sanctions are penal in nature, it requires the court to make specific findings of fact. *Trulis v. Barton*, 107 F.3d 685, 692 (9th Cir. 1995).

### D. Sanctions pursuant to Local Rule IA 4-1

The court's Local Rules of Practice also provide for a mechanism for imposition of sanctions. Rule IA 4-1(d) provides, "A court may, after notice and opportunity to be heard, impose any and all

7

appropriate sanctions on an attorney or party appearing in *pro se* who, without just cause, [f]ails to comply with any order of this court."

**IV.   Findings**

Based upon the papers filed herein and oral argument at the February 12, 2009 hearing, the court makes the following findings of fact:

1. At the conclusion of the February 3, 2009, hearing, Mr. South understood that this court's order allowed defendant's counsel to conduct *ex parte* interviews of the decedent's treating physicians not designated as expert witnesses.

2. At the conclusion of that hearing, Mr. South understood that counsel for the parties were to meet and confer concerning reasonable limitations about the scope of the *ex parte* physician interviews and report back to the court if issues remained in dispute.

3. Mr. Moore, defendant's counsel, understood that based on the directive to meet and confer on this issue, any physician interviews would be deferred until this issue was resolved.

4. Mr. South represented to the court on February 12, 2009, that this was not his understanding; therefore, he felt compelled to send twenty letters to the decedent's treating physicians on February 4, 2009, to advise them about the court order and to tell them that they were not required to meet with defendant's counsel.

5. The court does not find credible Mr. South's understanding that the physician interviews were not deferred until the scope of the interviews was resolved between the parties or by the court.

6. Mr. South, with Mr. Whitehead's knowledge, sent the twenty letters to treating physicians on February 4, 2009, yet on February 5, 2009, Mr. Whitehead, was ostensibly engaged in the meet-and-confer process this court ordered. Even though he knew Mr. South had already sent the letters on February 5, 2009, he disclosed nothing to defendant's counsel during these discussions.

8

7. Neither Mr. South nor Mr. Whitehead ever asked defendant's counsel to confirm that there would be no attempt to arrange or conduct physician interviews until the meet-and-confer process concluded, nor did they disclose the results of Mr. South's legal research concerning whether such interviews could be compelled.

8. Just as plaintiff's counsel failed to disclose that Mr. South had sent the letters to physicians, they also failed to disclose this fact to the court in their February 5, 2009 report to the court about the scope of the interviews (#74).

9. If Mr. South had a sincere concern that defendant's counsel might attempt to contact treating physicians before the scope of the interviews was resolved, he or Mr. Whitehead could have easily communicated those concerns to defendant's counsel, particularly since Mr. Whitehead was already discussing the scope of the interview with defendant's counsel.  Mr. Whitehead did not do so.

10. If Mr. South had a sincere concern that communications with defendant's counsel would somehow not resolve this issue, Mr. South had leave to file an emergency motion with the court to address this issue and seek a stay of any interviews until further order of the court. He did not do so.

11. The court finds that Mr. South, with Mr. Whitehead's acquiescence, did not do so because he intended to eviscerate the effect of this court's order and discourage these physicians from participating in the interviews with defendant's counsel.

12. The timing of Mr. South's letters – only one day after the February 3, 2009 hearing – as well plaintiff's counsels' failure to discuss their concerns with opposing counsel or raise them with the court, support the court's finding that Messrs. South and Whitehead acted in bad faith.

13. Mr. South's letter to decedent's treating physicians implicitly challenged this court's February 3, 2009, order permitting the *ex parte* physician interviews and  implied that the court's order was inconsistent with HIPAA ("Notwithstanding the requirements of HIPAA and the fact that the authorization previously provided to you has expired . . . .").

9

14. Mr. South made these representations in his letters, even though he knew the court had resolved this very issue at the February 3, 2009, hearing.

15. Mr. South knew or reasonably should have known that these physicians would have serious concerns about speaking with defendant's counsel if there were any question whether HIPAA prohibited the interviews.

16. Mr. South stated in the letter that he, on behalf of the plaintiff, had objected to defendant's request as improper, and because his client holds the physician-plaintiff privilege, the implicit message to the physicians was that they should not speak to defendant's counsel.

17. Mr. South further stated in his letter that pursuant to New York and Georgia case authority, the physicians were free to refuse to speak with defendant's counsel, even though Mr. South knew this issue had never been raised with defendant's counsel or the court.

18. In doing so, Mr. South undertook to advise these physicians of their rights when he is not retained as their counsel, and he also usurped the role of the court to fully consider this issue after notice and hearing. Rather than raising this issue with the court, Mr. South took it upon himself to unilaterally decide how the court's ruling should be implemented.

19. The fact that Mr. South sent copies of the twenty letters to defendant's counsel *after they were sent* in no way excuses Mr. South's misconduct. By the time defendant's counsel received the letters, so had the physicians.

20. Messrs. South and Whitehead were not without legal remedies in the face of the February 3, 2009, with which they disagreed. They could have objected to the order pursuant to LR IB 3-1, they could have moved for reconsideration pursuant to Fed.R.Civ.P. 59(e), and under either option, they could have also asked for a stay of the order until their objection or motion for reconsideration was resolved. Although plaintiff subsequently filed an objection to the February 3, 2009 order pursuant to LR IB 3-1 (#78), this does not excuse plaintiff's counsels' prior misconduct.

21. Plaintiff's counsel contend that the letters to the physicians were not as damaging as defendant claims, since it is highly unlikely that most physicians would agree to such interview under ordinary circumstances. The court finds this argument disingenuous because, if true, why send the letter in the first place?

22. Trial counsel owe an undivided allegiance to their clients, but they also owe important duties candor and honesty to the court and opposing counsel.

23. If a lawyer disagrees with an order of the court, that lawyer does not have leave to disregard or circumvent that order; his or her recourse is to take appropriate steps to test the validity of that ruling pursuant to Local Rules of Practice and the Federal Rules of Civil Procedure.

24. Based upon the facts described herein, including the timing of the letters, their content, Mr. South's failure to meet and confer with counsel or seek relief from the court, Mr. Whitehead's failure to disclose to defendant's counsel any concerns about attempts to meet with physicians during his own meet-and-confer discussion with defendant's counsel, and all facts recited herein, the court finds there is clear and convincing evidence that Mr. South and Mr Whitehead acted in bad faith or conduct tantamount to bad faith with the intention to undermine the court's order and insure, to the extent possible, that no physician who received Mr. South's letter would agree to an interview with defendant's counsel. *Roadway Express,* 501 U.S. at 766; *Chambers,* 501 U.S. at 36; *Fink v. Gomez,* 238 F.3d at 992. Mr. South's conduct in sending the letters to physicians, and Mr. Whitehead's complicity in failing to disclose their intention to send the letters, was done for the improper purpose of influencing these witnesses not to cooperate with defendant's counsel in *ex parte* interviews, and it was done to gain a tactical advantage; that is, to subvert the court's order and insure any physician inclined to be interviewed would not do so.

25. Based upon the foregoing, the court further finds that Mr. South and Mr. Whitehead acted recklessly and with an improper intention**.** *Fink v. Gomez,* 238 F.3d at 993.

11

Case 3:06-cv-00518-ECR-VPC   Document 85   Filed 02/18/09   Page 12 of 13

26. Based upon the foregoing, the court finds that Mr. South and Mr. Whitehead violated Fed.R.Civ.P. 37(b)(2). The parties agreed to bring discovery disputes before the court at case management conference and brief issues prior to the hearing as a means of expediting discovery disputes and to save money in attorney's fees for their clients. The court deems the original dispute concerning the *ex parte* interviews as a motion for protective order pursuant to Fed.R.Civ. P. 26(c); therefore, sanctions are available pursuant to Rule 37(b)(2).

27. Based upon the foregoing, the court finds that Mr. South and Mr. Whitehead acted with recklessness and bad faith. 28 U.S.C. § 1927. The court finds Mr. South and Mr. Whitehead multiplied proceedings in this case unreasonably and vexatiously.

28. Based upon the foregoing, the court finds that Mr. South and Mr. Whitehead, without just cause, failed to comply with this court's February 3, 2009 order by their conduct in violation of LR IA 4-1.

### V.  Sanctions

As noted, plaintiff filed an objection to this court's February 3, 2009 order that defendant's counsel may engage in *ex parte* interviews with the decedent's treating physicians not designated as expert witnesses (#78). If the District Court overrules this court's order as clearly erroneous or contrary law, there will be no *ex parte* interviews of the physicians. Nevertheless, plaintiff's counsels' sanctionable conduct will not be excused, since it is a separate issue from the disputed order itself. On the other hand, if the District Court affirms this court's order, it will be left to this court to fashion remedial measures to undo the harm plaintiff's counsel caused. Therefore, this court will defer its order concerning remedial steps it will order, including but not limited to, further sanctions under Rule 37(b)(2), until the District Court rules on plaintiff's objection.

That leaves the question of sanctions for plaintiff's counsel's violation of this court's order. Having reviewed the papers filed herein, having given notice and opportunity to be heard, and good cause appearing, defendant's motion for sanctions (#73) is GRANTED.

12

IT IS HEREBY ORDERED:

1. Pursuant to the court's inherent power, 28 U.S.C. § 1927, and LR IA 4-1, plaintiff's counsel shall pay all defendant all attorney's fees and costs incurred in connection with the motion for sanctions (#73). Defendant's counsel shall file statement of attorney's fees and costs pursuant to LR 54-16.

2. Pursuant to the court's inherent power and LR IA 4-1, plaintiff's counsel, <u>not</u> the plaintiff, are sanctioned the sum of $4,000.00, payable to the Attorney Admission Fund within thirty (30) days of the date of this order.

3. The court reserves imposition of additional sanctions until disposition of plaintiff's objection (#78) to the District Court.

IT IS SO ORDERED.

DATED: February 18, 2009.

*/s/ Valerie P. Cooke*

_____
UNITED STATES MAGISTRATE JUDGE